## DISBARMENT OF AN ATTORNEY.

Common Pleas Court of Richland County.

IN THE MATTER OF THE COMPLAINT AGAINST GEORGE MOREHOUSE, AN ATTORNEY AT LAW.

Decided, January, 1909.

*Attorney and Client—Retention of a Fund Belonging to Client—Proceedings to Disbar—Claim that Client Loaned the Money to the Attorney—Presumption Arising from Frequent Demands that he Pay it Over—What a Certificate of Admission to the Bar Imports.*

1. Admission to the bar amounts in Ohio to a voucher by the Supreme Court that the holder of the certificate is a man of good moral character and will deal honestly and faithfully with his clients, and the public have a right to rely thereon.

2. The fact that a client called many times at the office of her attorney for money which had been paid into his hands for her is inconsistent with a claim by the attorney that after he collected the money she loaned it to him and the loan was not yet due; and his retention of the money for more than four months in the face of her repeated demands upon him for it constitutes misconduct in office, justifying a judgment that he be suspended from the practice for one year and that he pay the costs of the prosecution.

WICKHAM, J.; NICHOLAS, J., and SEWARD, J., sitting.

This is a disbarment proceeding. In compliance with an order of this court, H. T. Manner and A. S. Beach, members of this bar, filed a complaint on September 8, 1908, charging George Morehouse, an attorney at law and member of the bar of this county, with misconduct in office. The matter constituting the alleged misconduct, as charged in the complaint, is, in substance, that in November, 1906, while acting in the capacity of an attorney for an old lady whose name is Mary Boyce, the respondent received from the probate court of this county the sum of $350, which was the money value of her inchoate right of dower in certain lands, sold by order of said court in a suit brought for that purpose by the guardian of her husband, Josiah Boyce, an imbecile; that the respondent, although frequent demands have been made upon him by his client, has failed and refused to pay or account to her for the money so received, or any part thereof.

We approach the consideration of this case, and the other cases submitted to us, with a profound sense of their importance. They are each of the greatest importance to the respondents respectively, for they involve their right to follow their chosen vocation in life to maintain themselves and their families; and the right to be known as members, and to exercise all the rights and privileges of the honorable profession of the law.

We recognize that no one possesses the requisite educational qualifications of admission to the bar of our state without years of laborious study; that the time, labor and expense required to fit one for the bar, makes the office of attorney of great importance, and no one should be deprived of his office for light and trivial offenses; nor for more serious and grave offenses, except upon sufficient evidence. To be sufficient, the evidence should be more than a mere preponderance; it should be clear, convincing and satisfactory.

On the other hand, we realize the importance of the cases to the public, to the bench, and to the bar of the state. Applicants for admission to the bar of our state must not only possess the required educational qualifications but they must also show that there is conjoined with knowledge and skill that ancient

requirement of the law—integrity of character. When an applicant has satisfied the examining committee, by recommendation and examination that he possesses these qualifications, and is recommended to the Supreme Court for admission, the court administers to him an oath to support the Constitution and laws of the United States and the state of Ohio, and to honestly demean himself in office. He then receives from the clerk of our highest judicial tribunal a certificate, that the applicant named therein is a person of good moral character; that he is competent to give advice in legal matters and to conduct legal proceedings. The certificate of good moral character is a voucher of the Supreme Court that the attorney will deal with his clients with honesty and fidelity to their interests. It is intended to be so understood by the public. They have a right to rely on the court's indorsement of the attorney for honesty and integrity. In his employment, the attorney is often intrusted by his client with interests of the highest character. It involves life, liberty, property and domestic relations. It is indispensable that the attorney be trustworthy, and of unswerving integrity of character in his official relations; that he keep faith with his client and betray no confidence. In these things the public have the right to be protected. Justice to the court, and the honor of his profession, demand that he act with fidelity and honesty with the interests intrusted to his care. If he fall short of this, and shows by his conduct that he does not possess these requisite characteristics, it is the plain duty of the court, when so officially informed, to remove the attorney from his office, to the end that the public may be protected from imposition, and the integrity and honor of the profession may be maintained.

These general observations apply to all the cases submitted to us. They embody principles that have been announced and adhered to by the courts of most of the states in this country from time immemorial. The adjudicated cases speak as with one voice in their proclamation. They are so well supported by reason and necessity, that we apprehend their correctness would not be questioned by any lawyer worthy of the title.

At this point it may not be amiss to say that it is a duty devolving on the members of the bar to see to it that no unfit or

unworthy member. be permitted to remain in their ranks with-
out bringing the matter to the attention of the courts.   They owe
this duty to themselves as members of the bar and officers of the
courts, and to the profession at large; for it is only by the elim-
ination of the delinquents that we can preserve the administra-
tion of justice, the purity of the courts, and maintain the high
standing of the legal profession—essential elements of civilized
society.

On a consideration of the evidence of the case in hand, we
find that late in November, 1906, the respondent, George More-
house, received from the probate court of this county the sum
of $350, which was the value of Mrs. Boyce's inchoate right of
dower in the lands belonging to her husband, which had recently
theretofore been sold.   The fact that he received the money is
admitted by him.   Soon after the receipt of the money by Mr.
Morehouse, Mrs. Boyce and Mrs. Williams appeared at his office.
Mrs. Boyce testifies, and she is supported by the testimony of
Mrs. Williams, that she then and there demanded the money
from Mr. Morehouse.   This is denied by Mr. Morehouse, who
claims that the money was left with him for safe-keeping.   Mrs.
Boyce made frequent visits to the office of Mr. Morehouse from
about the 1st day of December, 1906, to the 25th day of March,
1907.   She so testifies and her testimony is corroborated by Mrs.
Williams.   She says that the purpose of her visits at the office
of Mr. Morehouse was to secure the money due to her from him.
Mr. Fritzinger, the witness called by Mr. Morehouse, says in his
testimony that both Mrs. Boyce and Mrs. Williams were at Mr.
Morehouse's office several times that winter, and Mr. Morehouse
himself says in his testimony, in substance, that he was greatly
annoyed by Mrs. Boyce's visits both before and after March 25,
1907.

The fact is well established that she was there many times be-
tween the receipt of the money by Mr. Morehouse and the 25th
of March, 1907, and that she was there to get the money due to
her from Mr. Morehouse we think there can be no question.
There is no evidence to show that she was there for any other
purpose.   There was no business of hers in the hands of Mr.
Morehouse that would call her to his office.   The fact that she

was there many times for her money between those dates is inconsistent with the claim of the defendant that he had her money for safe-keeping and was ready and willing to turn it over to her at any time she demanded it.

We are satisfied from the evidence that the testimony of Mrs. Boyce and Mrs. Williams, in regard to the statements made by Mr. Morehouse to Mrs. Boyce early in December, and the frequent demands made upon him by Mrs. Boyce for the money, are true, and we have no difficulty in finding, in view of all of the circumstances of the case, that after receiving her money Mr. Morehouse appropriated it to his own use, and when she called for it he was unable to pay it to her.   According to his own statements and admission, and accepting for the purpose his version of the facts, he has $150 of her money which he has never offered to pay, nor any part thereof, since March 25, 1908.

Mr. Morehouse claims that he borrowed the $350 of Mrs. Boyce on the 25th day of March, 1907, for one year.   This is denied by Mrs. Boyce, and the evidence shows that she was a frequent caller at his office after that date, demanding her money.

We are of the opinion that there was no loan of the $350 to Mr. Morehouse on March 25, 1907.   That Mrs. Boyce frequently demanded payment after that date is admitted by Mr. Morehouse, and he wrote two letters to her in which no mention is made of the loan of the money.   We can not conceive why Mr. Morehouse, if he was unable to pay the money in July and August of 1907, did not mention the fact of the loan in the letters, if he had borrowed the money.   If he had in fact borrowed the money of her, the best excuse in the world for not paying her after that date would be that he had borrowed it for one year and was not bound to pay it until the year had expired.

The execution of the written instruments called receipts, introduced in evidence, is involved in more or less uncertainty. Mrs. Boyce is positive that she never received the so-called "first receipt."   Mr. Morehouse squarely contradicts her in that respect.   The fact that the so-called "second receipt," given March 25, 1907, bears date December, 1906, is not satisfactorily explained.   But however the fact may be in regard to the execution of the receipts, we are satisfied on the whole case that Mr.

Morehouse, at least from November, 1906, to the 25th day of March, 1907, was guilty of failing to pay to his client the money that had been collected by him for her, and therefore is guilty of misconduct in office.

The retention of money of his client by an attorney for four months, without any excuse or right to do so, in the face of repeated demands upon him for it, is misconduct in office. And upon the question of the loan we find that there was no loan, and consequently Mr. Morehouse was guilty of misconduct in office after March 25, 1907; and in fact, as we have before stated, has been guilty of failing to pay Mrs. Boyce, according to his own claims, the $150 which he does not deny has been due her, since March 25, 1908.

In determining what judgment should be rendered in this case we have taken into consideration that there is but a single charge against the defendant. If he had told the truth upon the witness stand, as we believe it to be, he would have stood in a better light before the court. But notwithstanding that, and in view of all of the facts and circumstances of the case, the judgment of the court is that he be suspended from the practice of the law for the period of one year from this date, and pay the costs of the prosecution of the charge.

I am compelled to say that our finding and judgment in this case is that of a majority only of the court. One of our number is of the opinion that the evidence is insufficient to warrant a finding of guilty of misconduct in office, and he therefore dissents from the judgment of the majority of the court.